# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER BELL : | |
|     **Appellant** : | |
| : | |
| v. : | Appeal Case No. 20-7076 |
| : | (1:18-cv-01331 (CJN)) |
| EAST RIVER FAMILY STRENGTHENING : | |
| COLLABORATIVE, INC. : | |
| : | |
|     **Appellee.** : | |

### APPELLEE'S REPLY TO APPELLANT'S RESPONSE TO MOTION FOR SUMMARY AFFIRMANCE

Summary affirmance is warranted because plaintiff did not make a 'protected disclosure' under the D.C. whistleblower protection statute in the absence of 'complaints' about gross mismanagement, illegality, or abuse of authority. Mot. at 3-16; *Dawson v. Special Counsel*, 2011 U.S. App. LEXIS 11460, *1 (D.C. Cir. June 7, 2011) (summary affirmance because plaintiff did not show any whistleblower protected "disclosure"). Judge Nichols also correctly held that the defamation claim failed because statements concerning plaintiff's termination were substantially true, an absolute defense. Mot. at 16-19. Appellant's Response does not overcome Appellee's entitlement to affirmance.

**I.     APPELLANT FAILS TO OVERCOME THE CLEAR ABSENCE OF WHISTLEBLOWER PROTECTED ACTIVITY.**

At the outset, Bell makes several important concessions: first, reports about minor, technical, and minimal matters are not protected activity (Resp. at 7-8);

second, by silence, that differences of opinion are not actionable (*id.*, *passim*); and third, that he bears the burden to proof protected activity (*id.* at 8).[1]

Moreover, the law does not permit Bell to 'lump together' his reports (about activity funds, mileage reimbursement, one late payroll, and non-expenditures) to try to create "gross mismanagement," or salvage his whistleblower claim. Resp. at 18-19. His position that individual complaints should be 'viewed together,' and not be considered 'in isolation,' *id.*, contravenes clear precedent. Indeed, the case upon which he primarily relies, *Coleman v. District of Columbia*, 794 F.3d 49, 59 (D.C. Cir. 2015), holds for the opposite proposition, rejecting the district court's approach (as Bell proposes here) that 'grouped' all internal communications together rather than examining each individual disclosure separately. *Id.*[2] Where,

---

[1] Also, none of Bell's communications use the statutory language of "gross" waste or abuse, or of "violation[s]," or other abuses listed in the DCPWA, or similar language and cannot lead "a disinterested observer . . . [to] reasonably conclude that the actions . . . evidence[d]" the type of gross abuse or violations described in the statute. *Wilburn v. District of Columbia*, 957 A.2d 921, 926-7 (D.C. 2008); *Zirkle v. District of Columbia*, 830 A.2d 1250, 1259-60 (D.C. 2003) (quotation omitted). Bell's reports therefore are not reasonably regarded as "protected disclosures" under the DCWPA.

[2] The other cases relied upon, Resp. at 18-19, are wholly inapposite. *Iyoha v. Architect of the Capitol*, 927 F.3d 561 (D.C. Cir. 2019) is not a whistleblower case, but rather a discrimination claim where a pattern may show discriminatory attitude. *Kakeh v. United Planning Org.*, 537 F. Supp. 2d 65 (D.D.C. 2008) is easily distinguishable because it involved reports about numerous serious financial irregularities, including an inability to generate timely financial statements, circumvention of cash disbursement procedures, unsupported disbursement of large amounts of cash, deteriorating liquidity and financial management that did

as here, multiple instances of claimed protected conduct occurred at different times about different issues, the courts analyze each disclosure separately to determine if it is an actionable one, and do not 'view[] [them] as a whole,' as Bell desires. *See e.g. Johnson v. District of Columbia*, 225 A.3d 1269, 1276-79 (D.C. 2020); *Winder v. Erste*, 905 F. Supp. 2d 19, 35-43 (D.D.C. 2012).

### A.     Reports About Local Mileage Reimbursement.

Judge Nichols appropriately rejected as minor and trivial complaints regarding mileage reimbursement both because Bell did not address the issue in his summary judgment briefing[3] and because a report about not paying costs for mileage (no more than a few thousand dollars a year) did not rise to the level of protected conduct. Mot. at 7-9. Having now conceded that a "protected disclosure" is one not of a merely technical or minimal nature" and "must be significant," Resp. at 7-8, Bell cannot legitimately argue that a complaint about a failure to make mileage reimbursements could conceivably be a protected disclosure under the DCWPA, as Judge Nichols correctly held. Mot. at 8-9.

---

"not meet Federal grant standards," a 'far cry' from the minor complaints at issue here.

[3] The Response does not cogently address the waiver issue, first with a *non sequitur* that he raised the issue in discovery and second, by erroneously asserting that he had no opportunity to address the mileage reimbursement question. Resp. at n. 1. The record demonstrates that the issue was not pled in the Complaint nor addressed by his counsel in oral argument on the motion for summary judgment.

3

Not surprisingly, Bell never bothers to explain, let alone substantiate, how a report about some unknown number of employees not receiving reimbursement for their 53¢ per mile travel expense for an undisclosed number of local trips could ever be a report of "gross mismanagement," let alone be illegal or a contract violation, Resp. at 10-13, as was his burden and is dispositive. Mot. at 9. Moreover, as in *Wilburn*, Bell's so-called reports never described local travel reimbursement delays using the statutory language of "gross" waste or abuse, or anything similar. For these reasons, his conduct can neither reasonably be regarded as "protected disclosures" nor lead "a disinterested observer . . . [to] reasonably conclude that the actions . . . evidence[d]" the type of gross abuse or violations described in the statute. *Wilburn*, 957 A.2d at 927 (case citations omitted).

## B. A Complaint About A Brief One-Business Day Payroll Delay.

As to a complaint about a one-time, one business day delay in paying staff, Judge Nichols correctly concluded that missing payroll on one occasion did not rise to the level of gross mismanagement or gross misuse of funds, a determination fully in accord with the DCWPA, which excludes "merely technical or minimal" violations from the definition of "protected disclosure." Mot. at 9-10 (citing cases).

Bell's meandering response, Resp. at 13-15, is difficult to decipher. Even considering the timing of his disclosure, the reasons for the delay (a major funder was late in making payment under its grant) and his inability to predict when staff

would be paid, *id*. at 14, Bell does not create mismanagement based on one isolated, inconsequential event. It is not surprising that other expenditures were delayed, which is not remotely indicative of financial chaos or systemic cash flow problems as Bell erroneously suggests. *Id*. at 14-15.

Additionally, Bell's passing reference to D.C. Code § 32-1302 of the D.C. Payment and Collection of Wages Act, Resp. at 15, is unavailing. While employers must pay wages on regular paydays, *id.*, the statute is interpreted to protect employees to recover '*unpaid* wages.' *See e.g. Chan Chan v. Children's Nat'l Med. Ctr.*, 2019 U.S. Dist. LEXIS 158864, *10-11 (D.D.C. September 18, 2019) (dismissing § 32-1302 wage claim because employee did not allege that he was not paid earned wages at all for time worked); *Wilson v. On the Rise Enterprises*, 305 F. Supp. 3d 5, 10-11 (D.D.C. 2018) (because plaintiff had received no wages, she had a cognizable claim under 32-1302); *Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 43 (D.D.C. 2016) (sufficiently pled claim based on allegations that plaintiff routinely was not paid for break-time hours worked); *Ayala v. Tito Contractors, Inc*., 82 F. Supp. 3d 279, 287 (D.D.C. 2015) (claim that employer paid nothing at all to two plaintiffs for hours worked was type of claim that Wage Payment Act was intended to remedy).

1122382v.1

Here, contrary to Bell's unsubstantiated assertion, there was no violation of § 32-1302 since all of East River's employees *were paid* their wages and thus there was no report of illegality for whistleblower protection purposes.

### C.     Reports About Not Spending Money On Program Activities.

As to the third category – not spending money on program activities that had been budgeted for – Judge Nichols properly found that a disagreement about non-expenditures for special programs was merely a non-actionable difference of opinion about spending priorities, a conclusion squarely in accord with precedent. Mot. at 10-14 (citing cases).

Bells' Response continues to magically convert a budget line item for projected activity fees (an estimate of future annual costs of special events, such as movies, bowling, dinner and the like) into a contract requirement, Resp. at 11-13, which conflates and confuses these two distinct concepts. While it is true that providing activities for participating youth is both important to the mission and required, as plaintiff points out, *id*., the record evidence established that there is nothing in either the contract or grant mandating that money must be spent to pay for special events or that directed precisely the settings in which mentoring must occur. MSJ SOMF at ¶¶ 2-4. Nor was there anything that precluded using free or

1122382v.1

D.C. government-sponsored events as the backdrop for mentoring, a point Bell concedes by silence. Resp. *passim*.[4]

Bell's multiple concessions that he never saw the contract, was not personally knowledgeable about its terms, was not involved in the budgeting process, and could not say that any particular contract term was violated, were fatal to his whistleblower claim under well-established law, Mot. 12-13 (citing cases), a point Bell does not bother to mention and concedes by silence. Resp. *passim*. No reasonable juror could find that he engaged in whistleblower activity where he admittedly had never seen the contract, grant or budget, and thus had only a 'subjective belief,' not an objective one, as required by the whistleblower statute and interpreting cases. Mot. 12-13.

Bell's subjective view that there was 'a negative impact' on the Program, Resp. at 11-12, is not enough to rise to the level of "gross mismanagement" even if mentoring had to take place in different settings and locales. With nothing beyond his personal preference that it was better for the youth to engage in paid-for events, rather than free ones, Bell cannot anchor a DCWPA claim to these complaints.[5]

---

[4] The Response misrepresents the testimony of East River's Manager Artherelle West, Resp. at 11, who was clear – the contract required the organization to provide activities, not pay associated activity fees or make special expenditures.

[5] What also 'gets lost in the mix,' for purposes of the 'gross mismanagement' analysis is that activity fees are a small fraction of the total program budget, Mot. n. 8, another undisputed fact fatal to this aspect of the claim.

The Response does not refute that East River's decision to re-prioritize from paid activities to free ones was a difference of opinion, reports of which are not protected whistleblower activity.

D.  **Reporting Time Entry Errors.**

As to the final category – reporting errors in the entry of employee time – Judge Nichols correctly found that such irregularities did not constitute gross mismanagement and that Bell failed to meet his burden to show "significant" and "serious errors," for purposes of the whistleblower law. Mot. at 14-16.

With sleight of hand, Bell recasts his claim using inflammatory phrases such as 'stealing time,' and 'falsifying' time records, Resp. at 15-17, in stark contrast to his previous characterization below that three employees were suspected of misreporting time or including what he called "fluff hours." The District Court properly rejected this claim based on Bell's failure to provide any specifics whatsoever (let alone documentation) regarding how long the practice was going on or how many total hours were at issue, details that remain nebulous on appeal. Resp. at 16. It was concededly *his* burden to show "significant" and "serious errors," Resp. at 8-9, which Bell simply did not sustain. Mot. at 14.

Judge Nichols held that a report of such minor regulatory non-compliance was not enough for whistleblower protection. Mot. at 14-16 (citing cases holding that backdating sign-in time sheets, problems with leave records, inaccurate

8

recording of holiday pay and dissatisfaction with the recordkeeping, are not complaints of gross mismanagement). Bell's Response, which gives short shrift to the well-established authority, Resp. at 17-18, does not overcome the inescapable legal conclusion that inaccurate record-keeping, erroneous timesheets and problems with time records do not amount to "gross mismanagement."

Bell relies heavily on *Yesudian v. Howard University*, 153 F.3d 731 (D.C. Cir. 1998), which affirms the proposition that "grumbling to the employer about . . . regulatory violations . . . does not constitute protected activity." *Id.* at 743. *Yesudian* also made clear that a plaintiff's internal investigation must involve some element of uncovering fraud. And, unlike Bell, Yesudian (who worked in the purchasing department and had no supervisory oversight) satisfied the requirement by, among other things, repeatedly complaining to senior university officials that he had evidence that his supervisor, the director of the department, was guilty of serious financial improprieties, such as accepting bribes from vendors, permitting payments to vendors who provided no services to the university, providing inside information to favored vendors in the bidding process, and taking University property home for personal use. He also collected evidence which he provided to management, *Yesudian*, 153 F.3d at 734, 740, which Bell did not do.

*Yesudian* is easily distinguished in multiple respects from this case, and Bell presents a far feebler case for finding protected activity because he adduced no

9

1122382v.1

evidence regarding any investigation of fraudulent activity and did not produce any documentation that he was investigating fraud. In contrast, Bell cited nothing – no contemporaneous email, memorandum, letter, or statement – in which he openly or specifically articulated anything about fraud, theft or illegality that would have alerted East River's management that he was doing anything other than his normal job duties. Even considering the litany of oral reports Bell made about program operations, conspicuously absent is any mention of fraud, corruption, dishonesty or the like. Moreover, unlike Yesudian, who had no responsibility for oversight or compliance, Bell was the Project Coordinator and responsible both for staff supervision and approval of time records. His situation bears none of the *Yesudian* hallmarks of protected whistleblower conduct.

For these reasons, no benefit will be gained from further briefing and argument, and summary affirmance is warranted.

## II. BELL'S RESPONSE FAILS TO SHOW A FALSE STATEMENT FOR A DEFAMATION CLAIM

The District Court properly found that there was no falsity in the statement regarding the reason for plaintiff's discharge – it was accurate that an investigation had occurred and East River concluded based on its review that Bell was involved in a time-padding scheme and should be terminated, all of which was true and not defamatory as a matter of law. Mot. at 16-17. The actual facts were sworn to,

uncontradicted and unimpeached: all four decision-makers unequivocally believed the allegations and terminated his employment for that reason. *Id.* at n.11.

Bell responds, as he did below, by unsuccessfully trying to 'dredge up' something to undercut the integrity of the evidence and East River's belief in the truth of the allegations. Resp. at 19-21. He self-servingly tries to 'poke holes' in Crouch's sworn account in a variety of ways (troubled past, inconsistent job attendance, the not-so-surprising irregularities in her time sheets, the hearsay views of other staff, disciplinary decisions regarding other employees who may have been aware of the scheme), Resp. at 20, none of which made Crouch's self-incriminating report any less true or believable. Absent proof that management did not "honestly believe[] in the reasons it offers," *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005), the Court "will not second-guess how [the defendant] weigh[ed] particular factors in the [] decision." *Jackson v. Gonzales*, 378 496 F.3d 703, 709 (D.C. Cir. 2007). No such proof existed here – only uncontroverted and unimpeached testimony that East River's management subjectively, reasonably, and unanimously believed and relied on Crouch's allegations.[6]

Without proof of falsity, summary judgment was properly entered as to the defamation claim.

---

[6] Bell abandons a defamation claim predicated upon second-hand hearsay and concedes that he is only relying on defendant's version of statements about his employment status, Resp. at 21-22, which the undisputed record reveals were true.

11

## CONCLUSION

Accordingly, the District Court's grant of summary judgment should, respectfully, be summarily affirmed.

>Respectfully submitted,
>
>WILSON, ELSER, MOSKOWITZ, EDELMAN& DICKER, LLP
>
>*/s/ Laura N. Steel*
>Laura N. Steel, Esquire (Bar No. 367174)
>1500 K Street, N.W., Suite 330
>Washington, D.C. 20005
>Phone: 202-626-7660
>Fax: 202-628-3606
>Laura.Steel@wilsonelser.com
>*Counsel for Appellant East River Family Strengthening Collaborative, Inc.*

# CERTIFICATE OF APPELLEE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

Undersigned counsel of record for Appellee, East River Family Strengthening Collaborative, Inc., hereby certifies that, with respect to the Reply to Appellant's Response to Motion for Summary Affirmance filed on September 28, 2020, that:

1. The Reply to Appellant's Response to Motion for Summary Affirmance complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 27(a)(2)(B), this document contains 2596 words.

2. The Reply to Appellant's Response to Motion for Summary Affirmance complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 word processing program in 14 point font size Times New Roman style.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN& DICKER, LLP


*/s/ Laura N. Steel*
Laura N. Steel, Esquire (Bar No. 367174)
1500 K Street, N.W., Suite 330
Washington, D.C. 20005
Phone: 202-626-7660
Fax: 202-628-3606
Laura.Steel@wilsonelser.com
*Counsel for Appellant, East River Family Strengthening Collaborative, Inc.*

1122382v.1

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of September, 2020, I served a true and accurate copy of the foregoing Appellee's Reply to Appellant's Response to Motion for Summary Affirmance with attached Certificate of Compliance via the D.C. Circuit's electronic filing system to:

>Les Alderman, Esquire
>Alderman, Devorsetz & Hora, PLLC
>1025 Connecticut Avenue N.W., Suite 615
>Washington, D.C. 20036
>*Counsel for Appellant Roger Bell*

>*/s/ Laura N. Steel*
>Laura N. Steel

1122382v.1